All right, all the board members are in session. This is now the session on all the justices of the United States. I ask you to come to the side. All right, I'm going to be seated. Except those who are going to argue, please approach. Oh, and I'll ask for a clerk. Can you call the case? The cases in the action there are not to be tried. They are to be reviewed in the State Farm. Good morning, Your Honor. Bernardo Bustamante, BUSDA, NAPD, on behalf of the State Farm. Good morning, Your Honor. Frank Stevens, on behalf of the State Farm. Okay. Generally have about 15 minutes per side. Save some time for a rebuttal. And I can tell you're a bit of a whisperer, so I'm going to ask you, Mr. Bustamante, keep your voice up, okay? I'll do my best. Swallow the mic, as it were. Thank you. Thank you. May it please the Court. Your Honors, Joseph Gene bought $100,000 in underinsured motorist protection from State Farm. He was injured in two occasions, each by an underinsured driver. When Gene contacted State Farm about settling his claims against the at-fault parties for their respective $20,000 limits of liability insurance, State Farm consented to those settlements. And it informed Gene in writing that it was going to set off the amount of the settlement, $20,000, plus $1,000 medical payments in each case from the limits of Gene's underinsured motorist coverage. State Farm was limiting its liability pursuant to statute, which it had a right to do. But then Gene goes to arbitration. He receives an award, and State Farm informs Gene, we are going to take that set-off that we initially took from our limits of liability, and now we're going to apply it one more time to the awards of arbitration. What issue did the arbitration determine? It determined the amount of damages to be paid to Gene. And in Plater's interpretation, it means the amount that State Farm owed Gene, not the amount. What was the referral to the arbitrator? Was it determine how much State Farm owes its insured, or determine the damages State Farm's insured sustained? The referral to arbitration in cases like this is simply a letter sent to State Farm saying, we name our arbitrator. State Farm names their arbitrator. Those two arbitrators select the third neutral. There's no specific language in the letter saying you are to determine X, Y, Z, or A, B, C. And nobody, for example, told the arbitrators he had already recovered $21,000, and so start from $21,000, how much more? No, it wasn't done on my part because I received an e-mail from one of State Farm's attorneys the morning of that arbitration saying, oh, I don't really think it's necessary to tell the arbitrators that Gene has already recovered $21,000 on each claim. Now, had I imagined that State Farm would turn around and say, that same $21,000 that we deducted from our limits of liability, we're going to do the same on the arbitration award, then I would have said, wait a minute, these arbitrators better know how much has been recovered so that they can make a fair assessment of State Farm's liability. I did not. I trusted that State Farm would comport itself in the way that it always comports itself in these type of arbitrations and simply make the payment that the arbitrators award. That it did not do. What kind of damages did the arbitrators award? For the occurrence of. . . No, no, not the amount. The damages, compensatory damages, right? Yes, Your Honor. Okay. So he's not allowed to recover twice, is he? This is not a double recovery, Your Honor. Why not? Because the policy is ambiguous. If you look at Section 1.1 of the policy, which is in Common Law Record, page 44, when it talks about limits, it talks about the most we will pay for all damages resulting from bodily injury to anyone insured, injured in any one accident, including all damages sustained by other insurances as a result of that bodily injury is the lesser of, one, the limits shown under each person, unless those amounts actually recovered under the applicable bodily injury insurance policies, bonds, or other security maintained on the underinsured motor vehicle. So that means. . . But, but, that aside, did you raise the issue of ambiguity in the trial court? I did not. I only raised. . . So you only raised it here, so it's forfeit. It will be, if Your Honor decides, if this Court decides that it is forfeited. We were before a court of equity. Having been before a court of equity, I believe that it is proper under the prevalent case law for this Court to consider that argument. Because. . . But why should we say we had it the first time on appeal when the Court, if you had that argument and gave it to the trial court, you would have had a decision and maybe the decision may have been in your favor. But you didn't raise it, so why should we in the first instance consider that? Because it would be the fair thing to do. Well, that would always be argued. In every case, they would never have forfeiture. No, Your Honor. That is not the case in every case, because here what this Court is, what we are asking this Court to do is to decide a very important issue for the citizens, for thousands of citizens of the State of Illinois that purchased underinsured motorist coverage from insurance carriers and expect that coverage to fill the gap. What State Farm is doing here is denying that coverage, denying the filling of that gap, and saying we can do whatever we want under the terms of our policy because we say so. Under your view of the case, how much would your client receive in each of these separate claims? Well, that's where the ambiguity of the policy comes in. No, I'm asking if you had your way, what would you say the results should have been? He would receive the $20,000 from the underinsured motorists, the $1,000 in medical payments, plus each award in arbitration. So $19,000 plus $20,000 plus $1,000 would be $40,000 for one occurrence, $25,000, $46,000 for the other. That would be the total amount of damages that he's entitled to. Otherwise, why buy underinsured motorist coverage? Why spend the money when the insurance carrier can turn around and say, you know, we're going to deduct this twice because we can. And that's exactly what happened in this case. That's what Mr. Gene and the citizens of the State of Illinois that buy this type of coverage are being told. We can deduct it. We can take a bite of the apple coming and going, and there's nothing you can do about it. Well, there is something we can do about it. And the fact that Your Honor may think that there's a forfeiture, I will not argue with that. But, as I said before, coming from a court of equity, what would be more equitable than for this court to consider every argument that the plaintiff has, even if the plaintiff failed to present it in a timely fashion? And especially because State Farm's position not only is in violation of the public policy of the State of Illinois, it ignores the statutory provisions that limit its liability in underinsured motorist cases to that amount of the coverage, lest the amounts received from the at-fault party and other recoveries, such as medical payments, workers' compensation benefits, in some cases Medicare payments. That does not give an insurance carrier the right to take two bites of the apple and deny insurers that have bought and paid premiums throughout the coverage period and deny them the coverage they've paid for. So if instead of writing a letter to Mr. Gene after the recovery from the other driver that said, we are setting off the $20,000 you recovered from the at-fault driver against your available coverage, what if State Farm said, we will set off against your available underinsured motorist coverage any amounts you have recovered from the at-fault driver? You go to arbitration, the arbitrators say your damages are $20,000. That's all you get, right? That's all you get plus the other recovery that you made. They can't just take your recovery and say we're going to set it off not only once but twice. Again, this is not a case where the plaintiff is making a double recovery or seeking a double recovery. I mean, even the statute in the historical notes shows that everything, the only thing that the underinsured motorist statute wants to do is fill the gap between the coverage that the underinsured motorist has and the coverage that the claimant, the one that has the underinsured motorist coverage actually has. So in this case, Gene has $100,000 in underinsured motorist coverage. The at-fault party has $20,000. State Farm has paid $1,000. They reduced the coverage, the policy limits on underinsured motorists per person to $79,000. So now State Farm has limited its liability to $79,000. Having taken that set off, why would State Farm be entitled to once more set off that $21,000? There is no logical explanation for that. It contravenes public policy. And, again, Your Honors, if Gene is paying premiums to be afforded this protection by State Farm, then where are his premiums going if State Farm can turn around and deny him the protection he's bought and paid for? And insofar as the policy language, we have a section that talks about the total amount of damages resulting from that bodily injury. Then the total amount of damages resulting from that bodily injury. There are so many subtle changes in the wording that one can't be sure what are they talking about. Are they only talking about the $20,000 from the underinsured drivers? Are they talking about the sum of all damages, meaning the monies from the underinsured drivers, the medical payments, the arbitration award? If we go back to the limits of liability, if you look at Section 1A2, which is, again, on Common Law Record, page 44, the way that State Farm reads that section is, okay, they're entitled to then reduce the damages that Gene is entitled to twice. So they limit the liability once by decreasing the coverage, and they reduce the damages that he's entitled to by using that same reduction. Other than saying that the policy language and the statute allows them to do so, State Farm doesn't explain how can this be fair? How can this be allowed by statute? I think that Section 1A2 is actually referring to deductions in addition to the monies received from the at-fault parties, going back again to medical payments, workers' compensation payments, maybe Medicare payments. But there's nothing that would allow, under the public policy of the State and the statute on underinsured motorist coverage, that allows State Farm to take this deduction twice. And for them to claim that they are simply not taking a deduction twice is to really play with semantics. There is nothing that shows how State Farm can be entitled to do this after a person and insured like Gene has been dutifully paying his premiums and expecting to be afforded the protection he bought and paid for. Thank you, Your Honor. Okay. Mr. Stevens? You've handled a few of these coverage cases in your career? I have, Your Honor. Yeah. Good morning. Mr. Gein got exactly what his policy provided. He got exactly what the underinsured motorist statute allows, and he got exactly what the Supreme Court has held, even in the two cases that Mr. Bustamante has cited in his brief. I'd start by saying that if this argument is so compelling that the court should ignore the rule that arguments not raised in the trial court cannot be raised here because it's unfair to thousands and thousands of people, I'd suggest to you he cannot cite a single case that supports what he just told you. There's not one appellate court case that says what he just said. The two cases that he relies on are Salzer and Hoagland, both Supreme Court cases. Hoagland involves two tortfeasors, and this court on repeated occasions has told us that Hoagland doesn't apply to a single tortfeasor. There's only a single tortfeasor here. But more importantly, Hoagland also holds that setoffs are allowed to prevent double recovery. Now, the only authority, the only people who had a right to determine Mr. Gein's damages were the arbitrators. The policy has an arbitration clause, and it says the arbitrators are charged with two duties to determine the liability of the underinsured motorist and the damages of the insured. So is there any possibility that the arbitrators understood that because this was an underinsured motorist claim and the minimum underinsured motorist limits are $20,000 per person per occurrence, that they must have assumed that he already recovered $20,000 and they were only determining what he was entitled to recover from State Farm? I don't know. I wasn't there. I'd never asked the arbitrators that, but I do. I can tell you I'm familiar with two of the arbitrators. One's a retired judge. The other one is a retired defense attorney, and I assume they know as much about the underinsured motorist statute as I do. And what you just said, Your Honor, was probably a very fair assumption, that they already understood that. But going back to State Farm v. Yappagean, and then case after case has said the arbitrators are only charged with two duties, the liability of the at-fault driver and the damages. And in Johnson, the Court said, nothing in the arbitration provision in the present case authorized arbitrators to consider any set-off or non-duplication provision that may be contained in any other provision of the policy. And this Court has held repeatedly that an arbitration award must be construed as enforceable. You are not to make assumptions to circumvent or find an arbitration award unenforceable. All presumptions are for the enforceability of the arbitration award. So, respectfully, Judge, I would say the arbitrators probably understood, because this was an underinsured case, that Mr. Gein had received money from the underinsured motorist. I think it would be illogical to assume they didn't know that. But under Illinois appellate case law, and even the Yappagean case, they are not entitled to consider those set-offs. They had to divest themselves of any assumption that they may have had, because that's not their job. Their job is only twofold, the fault of the other driver and the amount of damages that Mr. Bustamante sustained. And the fact is, that's all they did. The arbitration award is crystal clear. That's exactly what they did. In a very clear, precise language, that's what they said. This arbitration award did exactly what they were required to do, and State Farm was entitled, under appellate case law, to then go ahead and apply those set-offs. And those set-offs were applied. Mr. Bustamante has said repeatedly, both in his brief and now before this Court, that State Farm took two set-offs. I still don't understand why he thinks there's two set-offs. State Farm took only one set-off. The language allows for set-offs, but it's in two paragraphs, subparagraphs But those two subparagraphs are joined by the conjunction or, not and. It doesn't allow two set-offs. It allows the lesser of, and the lesser of was subparagraph 2, which is State Farm was entitled and did deduct from the amount that it owed the amount Mr. Bustamante had already recovered from the at-fault driver. That's exactly what they did, and consistent with Hoagland, it prevented a double recovery. And consistent with Seltzer, it did exactly what Seltzer requires, which is to place the insured in the same position he would have occupied if the tortfeasor had carried adequate insurance. The arbitrators decided that Mr. Gein's damages in one case were $25,000, in the other case $19,000, and State Farm sent Mr. Gein through his attorney a check for the $6,000, and that's the end of it. That's exactly how the statute should work. Thank you very much. Thank you. Briefly. Thank you, Your Honors. It seems that State Farm believes that Plaintiff Gein is appealing from his petition to confirm arbitration award rather than the trial court's entry of summary judgment on State Farm's petition for declaratory judgment. Now, what the arbitrators did or didn't do is not at issue here. What State Farm did is at issue. So if we look back at what State Farm has raised, the limits of liability, Section 1A1 and 1A2, and we look at that specific language, it says total amount of damages resulting from bodily injury. But when it's talking about deciding fault in page C43 of the common law record, it talks about what is the amount of compensatory damages. So now, as I stated before, the language that is being used is now being, it's being interpreted in such a way that courts and our legislature have granted insurers the right to deny effective underinsured motorist coverage to their insurers by manipulating the language and saying that we are entitled to decrease the amount of our liability twice. Because if they don't take that first bite of the apple, decreasing the limits of liability and the underinsured motorist coverage, we have a different ballgame. But they do it twice. And where in the case law the counsel so adeptly cites does it set forth that they can do that? There's nowhere. In fact, they raised it in their own brief. They say, we cannot tell you, cite to one case where an insurance company is allowed to do that. Neither can they. Because it shouldn't be allowed, and it hasn't happened as far as I know in my limited experience with these type of cases. But not only does it go against the statute, it completely violates public policy of the State of Illinois. Mr. Gene is not being made whole. In fact, the opposite is happening. There's a hole in his coverage. The UIM coverage that he bought and paid for doesn't exist. And that's what State Farm wants this Court to impress upon all Illinois citizens that buy underinsured motorist coverage, that insurers can do as they wish with the coverage that is bought and paid for. Your Honors, under the facts, statute, the public policy of the State of Illinois, this cannot stand. An insurer must never be allowed to take two setoffs on a single occurrence. I ask that you reverse the trial court's entry of summary judgment in favor of State Farm, enter summary judgment in favor of Gene, and return it for further proceedings consistent with your court's opinion. Thank you. Thank you both for your advocacy here today and in your brief writing, and we will take the matter under advisement and issue an opinion forthwith.